UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PATRICK M. MCKENNA,

              Plaintiff,

     -against-                         **MEMORANDUM & ORDER**
                                         16-CV-0024 (DRH)(GRB)

THOMAS P. DINAPOLI, individually and
in his official capacity as the COMPTROLLER
OF THE STATE OF NEW YORK, and as
administrative head of the NEW YORK STATE
AND LOCAL EMPLOYEES' RETIREMENT
SYSTEM, THOMAS NITIDO, individually
and in his official capacity as DEPUTY
COMPTROLLER OF THE STATE OF NEW
YORK, and the NEW YORK STATE AND
LOCAL EMPLOYEES' RETIREMENT
SYSTEM,

              Defendants.
-------------------------------------------------------------X

**APPEARANCES:**

**McKenna & Schneier**
Counsel for Plaintiff
10 Adair Court
Malverne, New York 11565
By: Patrick M. McKenna, Esq.

**Michael A. Levy Esq.**
Counsel for Plaintiff
1201 RXR Plaza
Uniondale, New York 11556

**ERIC T. SCHNEIDERMAN**
Attorney General of the State of New York
Counsel for Defendants
300 Motor Parkway - Suite 230
Hauppauge, New York 11788
By: Patricia M. Hingerton, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Patrick M. McKenna ("plaintiff") commenced this § 1983 action on January 4, 2016, pursuant to 42 U.S.C. § 1983 against New York State Comptroller Thomas DiNapoli ("DiNapoli"), Deputy Comptroller Thomas Nitido ("Nitido") (collectively "defendants") and the New York State and Local Employees' Retirement System ("ERS")[1] alleging violation of his rights under the due process and equal protection clauses of the Fourteenth Amendment. Plaintiff also asserts state law claims for tortious interference with contract and intentional infliction of emotional distress. Presently before the Court is defendants' motion to dismiss the complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted.

## BACKGROUND

The following allegations are taken from the complaint ("Compl.").

Plaintiff first became a participant in the ERS on May 5, 1987 by virtue of his appointment as a part-time village attorney with the Incorporated Village of Malverne. He resigned from that position in April 1991 and ceased to be an active participant member. (Compl. ¶ 9.) Following his appointment as a part-time attorney for the Nassau County Bridge Authority ("NCBA") on August 10, 1999 he again became a participant in the ERS until he retired from that position in January 2014.[2] (*Id.* at ¶¶ 10, 82-87.) During the period April 2000 to April 2011, plaintiff also served as part-time village attorney for the Incorporated Village of Valley Stream

---

[1] On May 26, 2016, plaintiff filed a stipulation of dismissal of his claims against ERS. (DE 18.)

[2] Paragraph 10 of the complaint refers to plaintiff's retirement date as January 15, 2014 whereas paragraph 12 states the date is January 15, 2013.

and was a participant member of the ERS by virtue of that employment. (*Id.* at ¶ 11.) Plaintiff's employment as part time attorney by the NCBA and the two villages was "processed and certified" by the Nassau County Civil Service Commission ("NCCSC"). (*Id.* at ¶¶ 11-12.) As a result McKenna "was entitled to, and did enroll as a member of the ERS" and "received fractional retirement service credit for each year of his approximately 14 years as a part-time attorney with the NCBA." (*Id.* at ¶¶ 14-15.)

In a letter dated September 14, 2010, the ERS advised plaintiff that although the NCBA reported him to ERS as an employee, "in fact he was an independent contractor" in that part-time position and would therefore "lose approximately 2.3 years of service at the NCBA going back to 1999, but . . . would continue as a Tier 4 member and his date of membership in the ERS would remain as of May 5, 1987." (Compl. ¶ 17.) In accordance with applicable law, plaintiff requested a "hearing and redetermination." (*Id.* at ¶ 18.)

The hearing was held in 2012 "before a hearing officer exclusively designated and approved by the defendants" and "chosen expressly to rubber stamp the defendants' initial determination." (Compl. ¶¶ 19, 126.) Plaintiff called five witnesses; ERS did not call any witnesses and offered only the September 14, 2010 letter as an exhibit. (*Id.* ¶¶ 20, 125.) The hearing officer "infringed on plaintiff's procedural due process rights by wrongfully placing the burden of production and proof on plaintiff to establish that he was an employee" and "refusing to compel the ERS to provide a scoring matrix so that plaintiff knew what the applicable standard the ERS was employing . . . ." (*Id.* ¶¶ 129-30.) "[O]n or about October 27, 2012, the hearing officer reported Recommended Findings and Conclusions *ex parte* to the defendants." The recommendations were accepted by defendants who then "made a final determination that

[plaintiff's] service credit from August 10, 1999 to the present [at NCBA] was denied." (*Id*. at ¶¶

21-22.) Plaintiff was served by certified mail on January 7, 2013 with a copy of the "Final

Determination and Decision of the hearing officer." (*Id*. at ¶ 23.)

On May 3, 2013,[3] plaintiff commenced an article 78 proceeding which was thereafter

transferred to the Supreme Court, Appellate Division, Third Department. (Compl. ¶ 24.) By

correspondence dated August 5, 2014, the respondents in that action informed the court they

would not be submitting an opposition brief because "we have concluded that the determination

under review in this proceeding is not supported by substantial evidence" and agree "that

annulment of the determination would be appropriate." (*Id*. at ¶ 26.) By Memorandum and

Judgment dated February 11, 2015, the Appellate Division annulled the Determination, stating

"respondents now concede that the determination was not supported by substantial evidence. We

agree . . . and accordingly annul." (*Id*. at ¶ 27 (citing McKenna v. DiNapoli, 125 A.D.3d 1081,

999 N.Y.S.2d 777, 778 (3d Dept. 2015).)

Plaintiff alleges that he "was, and is, aggrieved by defendants' illegal and retroactively

applied policy change and the ERS's Final Determination in that he was deprived of his full

monthly pension entitlement for approximately two years, he was forced to participate in an

orchestrated, preordained, and sham administrative hearing before a biased hearing officer, and

then was compelled to pursue a costly and time consuming article 78 proceeding and appeal to

vindicate his rights under the state constitution and statutes." (Compl. ¶ 28.)  Further, DiNapoli

and Nitido, "acting under color of state law and in furtherance of a custom and policy of the ERS,

---

[3] The date stated in the complaint, May 3, 2015, appears to be in error given, inter alia,
the date of the Third Department's  decision.

4

established, authorized, agreed to, approved and ratified the unconstitutional actions that were applied *ex post facto* to diminish and impair [plaintiff's] entitlement to his pension" knowing that these policies and actions "were clearly in violation of the New York State Constitution, New York statutes, existing case law, and the Comptroller's previous regulations, opinions, and publications." (*Id*. at ¶¶ 29-30.) Defendants did not treat all similarly situated part-time employees in the ERS the same. They targeted principally part-time attorneys and accountants who worked for special districts and school district and professionals who had not yet begun receiving retirement benefits or who had relatively small pensions "with the expectation that most of these professionals would abandon their claim to the benefits rather than pay the cost of litigating the issue . . . ." (*Id*. at ¶¶ 115, 120.) Excluded were "politically-connected part-time professional who worked for special districts and school districts," "part-time employees who were not attorneys or accountants" or who "worked for villages towns and cities," and "surviving spouses of similarly situated deceased part-time professionals." (*Id*. at ¶¶ 116-119.)

Plaintiff asserts that as a result of the foregoing, his substantive and procedural due process rights and his right to equal protection were violated.

## DISCUSSION

## I.    Legal Standard: Rule 12(b)(1) Motion

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.' "

*MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. Appx. 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

## II.      Legal Standard: Rule 12(b)(6) Motion

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

In determining a motion to dismiss, a court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (internal quotations omitted). "Merely mentioning a document in the complaint will not satisfy this standard . . . . " *Goel v. Bunge Ltd*, 820 F.3d 554, 559 (2d Cir. 2016). "In most instance where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason - usually because the document,

read in its entirety, would undermine the legitimacy of the plaintiff's claim - was not attached to the complaint." *Id.* (internal quotations omitted).

## III.    Eleventh Amendment Immunity

With respect to subject matter jurisdiction, the issue is whether plaintiff's claims against DiNapoli and Nitido in their official capacity are barred by the Eleventh Amendment.

> The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
> It has long been settled that the reference to actions against one of the United States encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities. Thus, when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Accordingly, "[t]he Eleventh Amendment bars the award of money damages against state officials in their official capacities." *Id.*; *accord Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-04 (1984). To the extent that plaintiff seeks money damages against DiNapoli and Nitido in their official capacities, the claims are dismissed.[4]

---

[4] The U.S. Supreme Court has held that states and state officials sued in their official capacities are not "persons" under § 1983. *Dube v. State Univ. of New York*, 900 F.2d 587, 595 (2d Cir. 1990) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)). The Supreme Court qualified this holding, however, "with the statement that 'a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official–capacity actions for prospective relief are not treated as actions against the State."'" *Id.* (quoting *Will*, 491 U.S. at 71 n.10); *see also Ex parte Young*, 209 U.S. 123 (1908). That DiNapoli and Nitido in their official capacity are not persons under 1983 provides an alternative ground for dismissal of Plaintiff's 1983 claims seeking damages from them.

Certain official capacity suits for prospective relief, however, not barred by the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123 (1908). "[A] limited exception to the general principle of sovereign immunity allows a suit for injunctive relief challenging the constitutionality of a state official's action in enforcing state law under the theory that such a suit is not 'one against the State.' and therefore not barred by the Eleventh Amendment." *CSX Transp. v. N.Y. State Office of Real Prop. Servs.,* 306 F.3d 87, 98 (2d Cir. 2002) (quoting *Ex Parte Young*, 209 U.S. at 154). "A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities provided that his complaint (a) 'alleges an ongoing violation of federal Law' and (b) 'seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

The complaint seeks a declaratory judgment only as to conduct that occurred in the past, i.e., the "diminishment and impairment of plaintiff's entitlement to a public pension was a violation of plaintiff's substantive and procedural due process rights . . . [and] right to equal protection . . . ." (Compl. at p. 31 (Wherefore ¶¶ A, B).) There is no assertion in the complaint of an ongoing violation and therefore the claims for declaratory relief against defendants is properly dismissed. *Cf. KM Enterprises, Inc. v. McDonald*, 518 Fed. Appx. 12, 13 n.1 (2d Cir. 2013) ("Eleventh Amendment prevents federal courts from providing any relief that is 'not the type of remedy designed to prevent ongoing violations of federal law,' including declaratory judgments that past acts were unlawful.") (quoting *Green v. Mansour*, 474 U.S. 64, 71-73 (1985)). Similarly, Plaintiff's request for "a permanent injunction enjoining and restraining the defendants from future retaliation against plaintiff and from future interference with [his] constitutionally

protected right to his public pension[,]" (Compl. at p, 31 Wherefore ¶ C), does not survive

defendant's Eleventh Amendment challenge because the complaint does not allege an ongoing

violation of federal law. *KM Enterprises, Inc. v. McDonald*, 2012 WL 4472010, * 7 (E.D.N.Y.

Sept. 25, 2012) ("If a complaint is based entirely upon past acts and does not allege continuing

conduct that, if stopped, would provide a remedy to plaintiff, then it does not implicate *Ex parte*

*Young*."), *aff'd*, 518 Fed. Appx. 12 (2d Cir. 2013). Given, however, the specter of an ongoing

violation raised in plaintiff's memorandum, *see* Pl.'s Mem. at 6 (Nitido has "failed to restore

retirement service credits accrued and earned between October 1, 2010 and January 15, 2014"),

he shall be given leave to replead.[5]

The Court will now address the remainder of defendants' arguments as they relate to the

1983 claims asserted against them in their individual capacities.

## IV. Statute of Limitations

The statute of limitations for Section 1983 claims in New York is three years. *Vega v.*

*Hempstead Union Free School Dist.*, 801 F.3d 72, 29 (2d Cir. 2015). A Section 1983 claim

"accrues when the plaintiff knows or has reason to know of the harm." *Eagleston v. Guido*, 41

F.3d 865, 871 (2d Cir. 1994) (internal quotation marks and citation omitted); *accord Shomo v.*

*City of New York*, 579 F.3d 176, 181 (2d Cir. 2009).  In determining when a claim accrues, "the

proper focus is on the time of the [challenged] act, not the point at which the *consequences* of the

act becomes painful." *Eagleston*, 41 F.2d at 871 (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8

---

[5] The Court notes parenthetically that (1) while plaintiff's memorandum refers to January 15, 2014 as his last day of employment, the complaint proffers his last day of employment varously as January 15, 2013  and January 15, 2014 (*see*, *e.g*., Comp. ¶¶ 10, 12) and (2) materials submitted by defendant suggest that credit for October 1, 2010 to January 15, 2013 was restored (*see* Coughlin Aff. at ¶ 6 & Exs. B, C).

(1981) (emphasis in original). Although the statute of limitations is an affirmative defense, it "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.1998).

Defendant maintains that plaintiff's federal claims accrued "back in September 2010, when he was advised that the Retirement System determined that he was wrongly identified as a public employee instead of an independent contractor, and that he would lose 2.3 years of service accrued at the NCBA." (Defs.'s Mem. at 10-11.) Plaintiff argues that his claims are timely because "the Complaint on its face alleges that McKenna was notified and served by certified mailing on January 7, 2013." (Pl.'s Opp. Mem. at 9.)[6]

In this case, plaintiff is alleging several distinct and separate acts, some of which are time barred. *See Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-113 (discrete acts occur on the day they happen and thus discrete acts "are not actionable if time-barred, even when they relate to acts alleged in timely filed charges"); *Gregory v. Inc. Village of Center Island*, 2015 WL 5093623, *5 (E.D.N.Y. Aug. 28, 2015) (holding plaintiff's claims were timely only insofar as they relate to events within three years of the complaint; "continuing violation doctrine does not apply to a claim (or series of claims) arising from discrete actions, even if those actions have long lasting effects."); *see also Brevot v. N.Y. City Dept. of Educ.*, 299 Fed. Appx. 19, 21 (2d Cir. 2008) (ongoing harms flowing from discrete events do not trigger the application of the

---

[6] Plaintiff also argues that defendant may be equitably estopped from raising the statute of limitations but the supporting allegations are not contained in the Complaint; they are contained in a declaration of counsel and exhibits thereto. Consideration of these materials is not appropriate on a motion to dismiss.

continuing violation doctrine).

To the extent that plaintiff claims that his constitutional rights were violated because he was not given adequate notice of the basis for the September 2010 determination, that claim accrued in September 2010 and therefore is time-barred. Similarly, claims based on "being forced to participate in an orchestrated, preordained, and sham administrative hearing before a biased hearing officer" (Compl. at ¶ 78), accrued at the latest in May 2012, when that hearing concluded, and are time barred. With respect to claims premised on defendants "embark[ing] on a selective, arbitrary, and discretionary executive policy program designed to retroactively diminish and impair the pension benefits by administrative fiat of targeted part-time professionals holding valid civil service titles" is timely to the extent the acts supporting these claims occurred after January 4, 2013.[7] For example, to the extent that the supporting act is the defendant's "final determination" adopting the hearing officer's recommendation that the plaintiff was served with on January 7, 2013, the claim is timely.

## V.     Plaintiff's Procedural Due Process Claim

To state a claim for a procedural due process violation a plaintiff must "first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL–CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir.1994) (citation omitted). The third element requires facts demonstrating that the plaintiff was deprived of "an opportunity . . . granted at a meaningful time and in a meaningful manner for [a] hearing

---

[7] The failure of the Court to specifically identify those acts is a function the lack of specific dates in the complaint.

appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) (internal

quotations omitted) (alteration in original). There appears to be no dispute that for purposes of

procedural due process plaintiff has a property interest in his pension benefits. Rather, at issue is

whether plaintiff has stated a claim that he was not afforded adequate process.

Here, plaintiff argues that "based upon the Attorney General's admission to the Third

Department that there was no substantial evidence to support the defendant's property

deprivation determination, that the hearing should never have gone forward in the first place;"

"he was denied a fair hearing by being forced to participate in . . . [a] sham hearing that failed to

provide him constitutionally adequate notice of the factual and legal basis for the initial

determination" which "precluded him form knowing what objections and evidence were required

in order to have a fair opportunity to make his case" and "forced him to carry both the burden of

production and proof."

Plaintiff's claim that defendants violated his due process rights by failing to give him

adequate notice of the factual and legal basis for the initial determination, in addition to being

barred by the statute of limitation, is not plausible. Plaintiff reliefs upon the decision in *Kapps v.

Wing*, 404 F.3d 105 (2d Cir. 2005). Therein the Court stated: "[N]otice of benefits determination

must provide claimants with enough information to understand the reasons for the agency's

actions. . . . This requirement, like the right to a fair hearing, is a basic requirement of procedural

due process. Claimants cannot know whether a challenge is warranted, much less formulate an

effective challenge, if they are not provided with sufficient information to understand the basis

for an agency's action." *Id*. at 123-34 (internal citation omitted). Here, however, the September

2010 initial determination, which is properly considered on this motion to dismiss, advised

plaintiff that it was determined that he was not an employee of NCBA but rather an independent contractor and therefore would lose 2.3 years of service credits and appended a statement listing fourteen factors that were considered in that determination. These factors included that the NCBA "did not exercise supervision or control or direct how [plaintiff] performed services;" plaintiff had no set hours, no permanent work space, and received "no fringe benefits such as health insurance, sick or vacation time," no time records were maintained for him, and he had "a personal employment contract" in the "form of a retainer agreement" that also allowed his law firm to bill at an hourly rate for additional services. The determination therefore provided sufficient information to understand the reasons for the determination and how to formulate an effective challenge. The determination, which also contains a reference to a July 2010 letter of plaintiff having been considered, appropriately advised plaintiff of his right to request a hearing and redetermination. The determination therefore satisfied the dictates set forth in *Kapps*. Moreover, the Complaint does not allege that at the time of the September 2010 initial determination plaintiff had retired and therefore the determination affected that amount of benefits he was receiving. *See New York State Nat. Org. for Women v. Pataki*, 261 F.3d 156, 168 (2d Cir. 2001) (holding procedural due process was satisfied "[g]iven the availability of Article 78 procedures, which can be invoked before actual prejudice arises"); *cf. King v. N.Y. City Employees Retirement Sys.,* – F. Supp. 3d –, 2016 WL 3996343 (E.D.N.Y. July 25, 2016) (denying motion to dismiss procedural due process claim where although notified that retirement benefits would be reduced, plaintiff was not provided with an opportunity to contest decision *before* the reduction); *Ortiz v. Regan*, 749 F. Supp. 1254, 1257 (S.D.N.Y. 1990) (holding procedural due process rights were violated where plaintiff, who had been receiving monthly

14

retirement benefits, stopped receiving them as she had not been provided with notice of termination of benefits nor an opportunity to contest the decision *before* the termination of benefits). Given the above, the complaint fails to allege a plausible claim that the September 2010 determination violated his due process rights.

With respect to the alleged deficiencies in the administrative hearing held in 2012, plaintiff had an adequate remedy in form of an Article 78 proceeding and therefore fails to state a claim. *See King v. New York City Employees' Retirement Sys.*, 595 Fed. Appx. 10, 12 (2d Cir. 2014) (Noting that the Circuit and courts "within the Circuit have held that the availability of post-deprivation Article 78 proceedings in the New York City Employees Retirement System ("NYCERS") pension context is generally adequate process even where the process internal to NYCERS was not wholly adequate . . . ."); *Massi v. Flynn*, 353 Fed. Appx. 658, 660 (2d Cir. 2009) (affirming dismissal of procedural due process claim as plaintiff "did receive a hearing and has challenged the result of that hearing by bringing an Article 78 proceeding – an adequate pre- and post-deprivation procedure available under New York law").

Having addressed plaintiff's procedural due process claims, the Court now turns to his substantive due process claim.

## VI.     SUBSTANTIVE DUE PROCESS

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York,* 680 F.3d 127, 151 (2d Cir. 2011). To state a claim for violation of this right, allegations must plausibly allege that the plaintiff "was deprived of a fundamental constitutional right," *Walker v. City of Waterbury*, 361 Fed. Appx. 163, 165 (2d Cir. 2010)

(citing *Local 342 v. Town Bd. of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994)), by government

conduct so egregious it as " to shock the contemporary conscience," *County of Sacramento v.*

*Lewis*, 523 U.S. 833, 847 n.8 (1998); *accord Rochin v. California*, 342 U.S. 165, 172 (1952);

*Ruston v. Town Bd. for Town of Skaneateles,* 610 F.3d 55, 58 n.2 (2d Cir. 2010).  Conduct that is

merely "incorrect or ill-advised" does not meet this standard.  *See Lowrance v. Achtyl*, 20 F.3d

529, 537 (2d Cir. 1994). The Supreme Court has "been reluctant to expand the concept of

substantive due process because guideposts for responsible decision making in this unchartered

area are scarce and open-ended."  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

Substantive due process "does not forbid governmental actions that might fairly be deemed

arbitrary or capricious and for that reason correctable in a state court lawsuit." *Corbley v. County*

*of Suffolk*, 45 F. Supp. 3d 276, 282 (E.D.N.Y. 2014) (citing *Natale v. Town of Ridgefield*, 170

F.3d 258, 263 (2d Cir. 1999)).

   Rights are only protected by substantive due process if they are fundamental or "implicit

in the concept ordered of liberty, or deeply rooted in this Nation's history and tradition." *Bryant*

*v. New York State Educ. Dept.*, 692 F.3d 202 (2d Cir. 2012) (quoting *Leebaert v. Harrington*,

332 F.3d 134, 140 (2d Cir. 2003)). "While property interests are protected by procedural due

process even though the interest is derived from state law rather than the Constitution,

substantive due process rights are created only by the Constitution." *Local 342*, 31 F.3d at 1196.

"[S]imple, state law contractual rights without more, are not worthy of substantive due process

protection." *Tessler v. Paterson*, 451 Fed. Appx. 30, 32-33 (2d Cir. 2011).  Applying these

precepts, the Second Circuit has held that"[g]enerally, interests related to employment are not

protected" by substantive due process. *Walker v. City of Waterbury*, 361 Fed. Appx. 163 (2010)

(citing *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198 (1978) (contrasting interest related to employment with traditional interests protected by substantive due process, such as procreation, marriage, and family life); *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir.1994) ("Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection.")). Plaintiff's right to a pension, although protected by New York Law, does not rise to the level of a fundamental right.

The cases cited by plaintiff are not to the contrary. Those cases found valid property interests in the context of procedural due process claims, not substantive due process claims. *See, e.g., Winston v. City of New York*, 759 F.2d 242, 247-49 (finding plaintiff had sufficiently alleged a "property interest" to make a procedural due process claim for a pension); *Morris v. New York City Employees Retirement Sys.*, 129 F. Supp. 2d 599, 606-607 (S.D.N.Y. 2016) (same). Substantive due process claims require a property interest of a much greater value. *See Gizzo v. Ben–Habib*, 44 F. Supp. 3d 374, 392 (S.D.N.Y. 2014) (" 'Even if one assumes the existence of a property right, . . . not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process right[s] are created only by the Constitution.' ") (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring)); *see also Walker v. City of Waterbury*, 601 F. Supp. 2d 420, 423 (D. Conn. 2009), *aff'd*, 361 Fed. Appx. 163 (2d Cir. 2010) ("Unlike in the case of procedural due process, [in the case of substantive due process], it is not enough to have a property right under state law.") (citation omitted).  Plaintiff has failed to plausibly allege a property interest in his state pension under the substantive due process clause. The motion to dismiss that claim is

granted.

## VII.    Equal Protection

The mandate of the Fourteenth Amendment's Equal Protection Clause is essentially to prohibit the government from treating similarly situated individuals differently. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause is typically invoked to bring law suits claiming discrimination based on membership in a protected class. Where, as here, there is no inherently suspect class is at issue, *see* Pl.'s Mem. in Opp. at 15, a plaintiff may assert an equal protection claim under a class-of-one theory, *see Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds* by *Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (per curiam), or selective enforcement, *Butler v. City of Batavia*, 323 Fed. Appx. 21 (2d Cir. 2009) (citing *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 790 (2d Cir. 2007)).[8]

A class-of-one claim arises when a plaintiff claims that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

> [T]o succeed on a class-of-one claim, a plaintiff must establish that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

---

[8] The Second Circuit has noted that although there is some question as to impact of the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562 on claims for selective enforcement, under either theory there must be different or unequal treatment. *See, e.g., 33 Seminary LLC v. The City of Binghamton*, – Fed. Appx. –, 2016 WL 6917227, * 2 (2d Cir. Nov. 23, 2016).

*Analytical Diagnostice Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (internal quotations omitted).

A class-of-one plaintiff is "required to identify comparators that are 'prima facie identical' in order to 'provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose . . . is all but certain.'" *Renato Pistolesi, Alltow, Inc. v. Calabrese*, – Fed. App. –, 2016 WL 7018331, * 2 n.22 (2d Cir. Dec. 1, 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008)); *cf. Ruston,* 610 F.3d at 59 (Class of one claims require "an extremely high degree of similarity between [plaintiffs] and the persons to whom they compare themselves.").

Here, the complaint only refers to other part-time employees in a conclusory manner, alleging that defendants targeted "principally part-time attorney and accountants who worked for special districts and school districts" and "part-time professionals who had not yet begun receiving retirement benefits or who had relatively small pensions" but did not investigate or pursue "similarly situated part-time professionals who "were not attorneys or accountants" or "part-time professionals who worked for special district and school district." (Compl. ¶¶ 115-120). The failure to identify even one comparator is fatal to this claim. *See Clark v. Kitt*, 2014 WL 4054284, *14 (S.D.N.Y. Aug.15, 2014).

A selective enforcement claim requires that a plaintiff plead  that  "(1) [he was] 'treated differently from other similarly situated' [entities] and (2) this 'differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *Butler*, 323 Fed. Appx.

at 22 (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)). Like a class of one claim, a selective enforcement claim must allege the existence of similarly situated comparators. Here, the complaint is devoid of any description of the type of work, duties and working hours and conditions of those who were not investigated or pursued so as to enable a plausible conclusion that the circumstances of the plaintiff and those of a comparator do not differ to a degree that would justify differential treatment. *See Roman Catholic Diocese of Rockville Centre, N.Y. v. Inc. Village of Old Westbury*, 2012 WL 1392365, * 12 (E.D.N.Y. Apr. 23, 2012).

The motion to dismiss the equal protection claim is granted. Plaintiff will, however, be given an opportunity to replead.

## VIII.   Remaining Arguments for Dismissal

Given the Court's dismissal of plaintiff's federal claims, it is unnecessary at this juncture to address defendants' arguments that they are entitled to qualified immunity and that plaintiff has failed to state claims for intentional interference with contract.[9] To the extent that plaintiff avails himself of the opportunity to file an amended complaint, defendants may renew those arguments. To the extent plaintiff fails to file an amended complaint and given the dismissal of his federal claims, the court will decline to exercise supplemental jurisdiction over his state law claim and dismiss it without prejudice.

## CONCLUSION

For the reasons set forth above (1) all claims for monetary relief against DiNapoli and

---

[9] Plaintiff has voluntarily withdrawn his claim for intentional infliction of emotional distress. (Pl.'s Mem. at 21.)

Nitido in their official capacity are dismissed, (2) the claims for declaratory and injunctive relief are dismissed with leave to file an amended complaint within twenty (20) days of the date hereof; (3) the procedural and substantive due process claims are dismissed; (4) the equal protection claim is dismissed with leave to file an amended complaint within twenty (20) days of the date hereof; (5) to the extent an amended complaint is not filed, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claim.

Dated:  Central Islip, New York
        December 22, 2016                    _/s  Denis R. Hurley___
                                             Denis R. Hurley
                                             United States District Judge