UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PATRICK M. MCKENNA,

                           Plaintiff,

    -against-                               **MEMORANDUM & ORDER**
                                                            16-CV-0024 (DRH)(GRB)

THOMAS P. DINAPOLI, individually and
in his official capacity as the COMPTROLLER
OF THE STATE OF NEW YORK, and as
administrative head of the NEW YORK STATE
AND LOCAL EMPLOYEES' RETIREMENT
SYSTEM, and THOMAS NITIDO, individually
and in his official capacity as DEPUTY
COMPTROLLER OF THE STATE OF NEW
YORK,
                       Defendants.
------------------------------------------------------------X

**APPEARANCES:**

**McKenna & Schneier**
Counsel for Plaintiff
10 Adair Court
Malverne, New York 11565
By: Patrick M. McKenna, Esq.

**Michael A. Levy Esq.**
Counsel for Plaintiff
1201 RXR Plaza
Uniondale, New York 11556

**Eric T. Schneiderman**
Attorney General of the State of New York
Counsel for Defendants
300 Motor Parkway - Suite 230
Hauppauge, New York 11788
By: Patricia M. Hingerton, Esq.


**HURLEY, Senior District Judge:**

      Plaintiff Patrick M. McKenna ("Plaintiff") commenced this action pursuant to

42 U.S.C. § 1983 against New York State Comptroller Thomas DiNapoli ("DiNapoli"), Deputy Comptroller Thomas Nitido ("Nitido") (collectively "Defendants") and the New York State and Local Employees' Retirement System ("ERS")[1] alleging violation of his rights under the due process and equal protection clauses of the Fourteenth Amendment. Plaintiff also asserted state law claims for tortious interference with contract and intentional infliction of emotional distress. By Order dated December 22, 2016 (the "2016 Order"), the Court dismissed all claims for monetary relief against DiNapoli and Nitido in their official capacity, as well as the claims for substantive and procedural due process; the equal protections claim was dismissed with leave to re-plead. An amended complaint was filed and Defendants have moved to dismiss it for failure to state a claim. For the reasons set forth below, the motion is granted.

**BACKGROUND**

The following allegations are taken from the amended complaint ("AC").

Plaintiff first became a participant in the ERS on May 5, 1987 by virtue of his appointment as a part-time village attorney with the Incorporated Village of Malverne. He resigned from that position in April 1991 and ceased to be an active participant member. (AC ¶ 9.) Following his appointment as a part-time attorney for the Nassau County Bridge Authority ("NCBA") on August 10, 1999 he again

---

[1] On May 26, 2016, Plaintiff filed a stipulation of dismissal of his claims against ERS. (DE 18.) Thereafter, he voluntarily withdrew his claim for intentional infliction of emotional distress.

became a participant in the ERS until he retired from that position in January 2013. (*Id.* at ¶¶ 10, 79-85.) During the period April 2000 to April 2011, Plaintiff also served as part-time village attorney for the Incorporated Village of Valley Stream and was a participant member of the ERS by virtue of that employment. (*Id.* at ¶ 11.) Plaintiff's employment as part time attorney by the NCBA and the two villages was "processed and certified" by the Nassau County Civil Service Commission ("NCCSC"). (*Id.* at ¶ 14.) As a result McKenna "was entitled to, and did enroll as a member of the ERS" and "received fractional retirement service credit for each year of his approximately 14 years as a part-time attorney with the NCBA." (*Id.* at ¶¶ 15-16.)

In a letter dated September 14, 2010, the ERS advised Plaintiff that although the NCBA reported him to ERS as an employee, "in fact he was an independent contractor" in that part-time position and would therefore "lose approximately 2.3 years of service at the NCBA going back to 1999, but . . . would continue as a Tier 4 member and his date of membership in the ERS would remain as of May 5, 1987." (AC ¶ 18.) In accordance with applicable law, Plaintiff requested a "hearing and redetermination." (*Id.* at ¶ 19.)

The hearing was held in 2012 "before a hearing officer exclusively designated and approved by the Defendants." (AC ¶ 19.) Plaintiff called five witnesses; ERS did not call any witnesses and offered only the September 14, 2010 letter as an exhibit. (*Id.* ¶ 22.) "[O]n or about October 27, 2012, the hearing officer reported

3

Recommended Findings and Conclusions *ex parte* to the [D]efendants." The recommendations were accepted by Defendants who then "made a final determination that [Plaintiff's] service credit from August 10, 1999 to the present [at NCBA] was denied." Plaintiff was served by certified mail on January 7, 2013 with a copy of the "Final Determination and Decision of the hearing officer." (*Id*. at ¶¶ 22-24.)

On May 3, 2013, Plaintiff commenced an article 78 proceeding which was thereafter transferred to the Supreme Court, Appellate Division, Third Department. (AC ¶ 25.) By correspondence dated August 5, 2014, the respondents in that action informed the court they would not be submitting an opposition brief because "we have concluded that the determination under review in this proceeding is not supported by substantial evidence" and agree "that annulment of the determination would be appropriate." (*Id*. at ¶ 27.) By Memorandum and Judgment dated February 11, 2015, the Appellate Division annulled the Determination, stating "respondents now concede that the determination was not supported by substantial evidence. We agree . . . and accordingly annul." (*Id*. at ¶ 28 (citing McKenna v. DiNapoli, 125 A.D.3d 1081, 999 N.Y.S.2d 777, 778 (3d Dept. 2015).)

Plaintiff alleges that he "was deprived of his full monthly pension entitlement" for approximately two years, from November 13, 2013 through the latter part of 2015 when it was fully restored. (AC ¶ 29).

It is alleged that the actions against Plaintiff were the result of " a selective and discretionary administrative program" embarked upon by DiNapoli in 2008

4

under the "guise of correcting fraudulent errors in the record of the retirement system" that was "designed to diminish and impair the pension benefits of targeted part-time professionals holding valid civil service titles by declaring them 'independent contractors' rather than 'employees' . . . ." (AC ¶¶ 17, 64.) "Without any legislative changes to the state retirement or civil service laws, and without any changes to the applicable regulations, [DiNapoli] selectively and arbitrarily decided in early 2008 to retroactively purge part-time professionals (primarily attorneys) who were employed by participating public employers, and who held validly approved part-time exempt class civil service titles subject to payroll and withholding. He targeted only select professionals who worked for special districts and school districts. He did not apply the same administrative standards to the myriad other part-time civil servants who were members of the ERS." To implement this new policy, "defendants developed and utilized a list of 23, mostly subjective, factors (rather than the 11 factors previously used in 1999) purportedly to assist the ERS in determining whether an employer-employee relationship exists." (*Id.* ¶ 68.) The use of this new worksheet was "subjective, arbitrary and capricious" as evidenced by Defendants having "never adopted a scoring matrix" and not assigned "relative weights" to each of the 23 factors "so that one could objectively determine what combination of factors were needed in order to establish employee status." (*Id.* ¶¶ 69-71.) "[T]he use of the subjective factors with unmeasurable scoring criteria allowed the defendants to arbitrarily adopt any finding they chose in a given case. Two individuals could score identically on each of the 23 factors and one could be

declared an employee while the other could be declared an independent contractor. One individual could be deemed an employee based on only one factor, while another individual could score 22 out of 23 as an employee and still be deemed not to be an employee." (*Id.* ¶ 103.) "[A]s part of the 'corrupt political culture in Albany" Defendants "selectively applied different standards to politically connected individuals similarly situated to [Plaintiff]," including eight named individuals who were part-time attorneys for various municipal entities, consisting mostly of school boards, and who "upon information and belief . . . would have scored identically to the Plaintiff on defendants' retroactively imposed list of 23 factors, yet unlike Plaintiff" never had their retirement service credit entitlements challenged by the Defendants. (*Id.* ¶¶ 104-112.) Under their 2008 policy, Defendants "did not pursue or investigate the pensions of any similarly situated part-time professionals who worked for villages, towns and cities" and did not pursue or investigate the pension benefits paid to surviving spouses of similarly situated deceased part-time professionals;" rather they "principally targeted part-time professionals who had not yet begun receiving retirement benefits or who had relatively small pensions as a deliberate strategy with the expectation that most of these professionals would abandon their claim to the benefits rather that pay the cost of litigating the issue of entitlement up to the [Appellate Division] Third Department." (*Id.* ¶¶ 116-18.)

Plaintiff asserts that as a result of the foregoing, his right to equal protection was violated.

6

## DISCUSSION

**I.      Legal Standard: Rule 12(b)(6) Motion**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

In determining a motion to dismiss, a court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007), as well as matters of which judicial notice may be taken. *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

## II. The Equal Protection Claims are Dismissed

The mandate of the Fourteenth Amendment's Equal Protection Clause is essentially to prohibit the government from treating similarly situated individuals differently. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

The Equal Protection Clause is typically invoked to bring law suits claiming discrimination based on membership in a protected class. Where, as here, there is no inherently suspect class is at issue, a plaintiff may assert an equal protection claim under a class-of-one theory, *see Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds* by *Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (per curiam), or selective enforcement, *Butler v. City of Batavia*, 323 Fed. App'x 21 (2d Cir. 2009) (citing *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 790 (2d Cir. 2007)).[2]

A class-of-one claim arises when a plaintiff claims that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

> [T]o succeed on a class-of-one claim, a plaintiff must establish that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Analytical Diagnostice Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (internal quotations omitted).

---

[2] The Second Circuit has noted that although there is some question as to impact of the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562 on claims for selective enforcement, under either theory there must be different or unequal treatment. *See, e.g., 33 Seminary LLC v. The City of Binghamton*, 670 Fed. App'x 727, 730 (2d Cir. Nov. 23, 2016).

9

A class-of-one plaintiff is "required to identify comparators that are 'prima facie identical' in order to 'provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose . . . is all but certain.'" *Renato Pistolesi, Alltow, Inc. v. Calabrese*, 666 Fed. App'x 55, 58 & n.2 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008)); *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (A class of one equal protection claims requires a plaintiff to allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.") *cf. Ruston,* 610 F.3d at 59 (Class of one claims require "an extremely high degree of similarity between [plaintiffs] and the persons to whom they compare themselves."); *Bizarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) (Class of one plaintiff must demonstrate that disparate treatment was caused by impermissible motivation; mere showing of disparate treatment is insufficient.)

Here, it is alleged upon "information and belief" that the eight named individual are "politically connected," and "would have scored identically" on the list of 23 factors but never had their retirement credits challenged. This pleading is insufficient as no basis for Plaintiff's information and belief is set forth; there are no specific facts set forth to support the conclusory assertion that these individuals would have scored identically or that they are politically connected.

The motion to dismiss the class of one claim is granted.[3]

Turning now to the selective enforcement claim, it requires that a plaintiff plead that "(1) [he was] 'treated differently from other similarly situated' individuals and (2) this 'differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Butler*, 323 Fed. App'x at 22 (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)). Here again, the complaint is devoid of any specifics. Lacking is any basis for the assertion that political connections were a factor in determining whether to challenge an individual's retirement credits. Further, there is no description of the type of work, duties, working hours and work conditions of those

---

[3] It should also be noted that, as the Second Circuit explained in *Bizarro*, the pertinent question "is not whether the defendants correctly understood the rules they were enforcing." Rather, the "focus[] [is] on whether the official's conduct was rationally related to the accomplishment of the work of their agency." 394 F.3d at 88-89. Under New York's Retirement and Social Security Law, the Comptroller is the administrative head of the Retirement System and the trustee of the fund in which the assets of the Retirement System are maintained. N.Y. Retire. & Soc. Sec. Law §§ 11(a) 13(b), 74(b), 111(c). As such, he has the "exclusive authority to determine all applications for any form of retirement or benefits" and is responsible for correcting "any change or error in any record of the retirement system [that] causes a member or beneficiary of such system to receive more or less than he would have been entitled to receive had such record been correct . . . ." *Id*. §§ 74(b), 111(c). The courts of New York have held that the Comptroller's responsibility to correct errors includes errors attributable to erroneous reporting by participating employers of an individual's eligibility for membership in the Retirement System. *See Brosnahan v. New York State Employees' Retirment Sys.*, 174 A.D. 2d 954, 955 (3d Dep't 1991). Thus, it is hard to discern how the conduct of the Defendants in challenging Plaintiff's retirements credits is not rationally related to the work of the Comptroller as administrative head and trustee of New York's Retirement System.

who were not investigated or pursued. Without the latter specifics there can be no plausible conclusion that the circumstances of the Plaintiff and those of any of the named comparators do not differ to a degree that would justify differential treatment. *See Joglo Realties, Inc. v. Seggos*, 229 F. Supp.3d 146.155-56 (S.D.N.Y. 2017); *Roman Catholic Diocese of Rockville Centre, N.Y. v. Inc. Village of Old Westbury*, 2012 WL 1392365, * 12 (E.D.N.Y. Apr. 23, 2012).

Moreover, even assuming the allegations as to the comparators are sufficient,[4] the claim for selective enforcement still fails. The "[m]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." *LeClair v. Saunders*, 627 F.2d 606, 60-8 (2d Cir. 1980); *accord Zahara v. Town of Southold*, 48 F.3d 674, 684 (2d Cir. 1995) (Our precedents . . . have firmly established that equal protection does not require that all evils of the same genus be eradicated or none at all.") (internal quotation marks omitted). As the Court in *Joglo* recently wrote:

> It long has been recognized that government officials retain wide discretion about enforcement decisions. The Supreme Court has acknowledged that an agency decision not to enforce often involves a complicated balancing of a number of factors. As a result, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement

---

[4] Certain court have held that a less stringent standard of "similarly situated in all material respects" applies to claims alleging selective enforcement. *See, e.g., Joglo*, 229 F. Supp.2d at 153; *Hampshire Recreation, LLC v. The Village of Mamaroneck*, 2016 WL 1181727 (S.D.N.Y. Mar. 25, 2016).

> action best fits the agency's overall policies, and , indeed,
> whether the agency has enough resources to undertake
> the action at all. Further, an agency generally cannot act
> against each technical violation of the statute it is
> charged with enforcing. The Second Circuit has likewise
> stated that decisions regarding enforcement discretion . . .
> must reflect limited agency resources, enforcement
> priorities and other administrative constraints.

229 F. Supp. 3d at 155 (internal citations and quotation marks omitted). Applying the principles enunciated in *Joglo* to the case at bar, that there were other attorneys employed part-time for municipal entities whose retirement credits Defendants did not challenge, does not plausibly allege a selective enforcement claim. It is not plausible to expect that the Comptroller's office would have the resources to challenge the retirement service credits of all attorneys employed part-time by municipal entities. Even assuming that Defendants chose to allocate their resources to challenge "professionals who worked for special districts and school districts" and not "the myriad other part-time civil servants who were members of the ERS" and "principally targeted part-time professionals who had not yet begun receiving retirement benefits or who had relatively small pensions," these are not impermissible considerations. Additionally, there are allegations in Plaintiff's own complaint which demonstrate that the Controller's office did challenge the retirement service credit of other attorneys who served part-time for municipal entities on the grounds they were independent contractors, not employees. *See* AC ¶¶ 52, 53 (citing the cases of *Moury v. DiNapoli*, 111 A.D.3d 117 (3d Dept. 2013) and *Brothman v. Di Napoli*, 114 A.D.3d 1072 (3d Dept. 2014) in which the Third

Department reversed determinations by the Comptroller that part-time attorneys were independent contractors and not an employee eligible for a pension). Finally, the bald allegation that the named comparators are "politically connected" is insufficient to plausibly allege an impermissible consideration.

The motion to dismiss the selective enforcement claim is granted.

### III. Remaining Arguments for Dismissal

Given the Court's dismissal of Plaintiff's federal claims,[5] it is unnecessary to address Defendants' arguments that they are entitled to qualified immunity and that Plaintiff has failed to state claims for intentional interference with contract. With respect to the state law claim, the Court declines to exercise supplemental jurisdiction over it and dismisses it without prejudice.

## CONCLUSION

The motion to dismiss the amended complaint is granted. The dismissal of Plaintiff's state law claim is without prejudice. The Clerk of Court is directed to enter judgment accordingly and to close this case.

Dated: Central Islip, New York
December 15, 2017

/s Denis R. Hurley
Denis R. Hurley
United States District Judge

---

[5] The amended complaint asserts a separate cause of action for declaratory and injunctive relief based on the alleged violation of Plaintiff's equal protection rights. However, these claims are barred by the Eleventh Amendment as the amended complaint does not allege continuing unlawful conduct as against Plaintiff. *See* 2016 Order at 8-10.